crawling fast clunk clunk crunch crunch folded needed a nap clunk clunk clunk clunk clunk clunk clunk clunk clunk clunk clunk clunk Okay, the next argued case is number 15, 3163, Williams against the United States Postal Service, Mr. Schoenhardt. Thank you, Judge Newman. Good morning and may it please the court. In this case, we're asked to look back to the stone line of cases that takes us back to 1999 and to determine whether, as this court held in stone, any new and material ex parte communication that is presented during an adverse employment proceeding at an agency of which the employee is not provided notice or an opportunity to respond rises to the level of a due process violation. You know what concerns me about your argument? If we agree and therefore eliminate the opportunity for whatever it was that was communicated ex parte, doesn't your client run the risk of an even more drastic remedy because the mitigating, I don't think anyone disagrees, that that communication was more likely than not mitigating. Isn't he now running the risk of just being entirely separated rather than demoted? Your Honor, for better or worse, any time we return an action to an agency for an entirely new and constitutionally correct proceeding, we run a risk that the result differs. And indeed, when we're looking at a case in which the ex parte communication... It's less than a risk. It's a probability. Is this a probability that your client appreciates? Unfortunately, Your Honor, we cannot determine how great that probability is as what precise information that was provided is currently unknown. There's nothing to say it was anything other than mitigating? There is currently no evidence that it was anything other than mitigating. There is also no evidence as to precisely what... Nothing in either brief? Nobody says it was anything other than mitigating. Isn't there a risk that you're taking that that is confirmed? The sources of the communication, the nature of the communication is brought out? In an entirely new proceeding, Your Honor, the communication should not be part of the proceeding at all. But yes, Your Honor, there is a risk... I don't know if it's a new proceeding or not. It could be a new decision without the benefit of that communication. There was a decision, apparently, an internal resolution according to what you've both told us. There was no internal decision without the ex parte communication. There was a proposed removal. Then at the time of decision, ex parte information was brought into the proceedings without notice or an opportunity to respond. Right, so the new proceeding would be presumably by a different decision maker who doesn't have the benefit of the ex parte communication, correct? Correct, Your Honor. So what Judge Newman's saying is a very real risk because if it in fact resulted in a lesser penalty, then Mr. Williams could end up actually facing that proposed removal. It is a risk, Your Honor. The reason I'm hedging on the question of probability is because without knowing precisely what information was in fact provided during the proceedings, it is difficult and in fact, in my view, impossible to determine whether and to what extent any mitigation could have been greater, lesser, or otherwise if things had proceeded differently. Okay, so I think is that the heart of your problem is that it's not so much a question of do we ever classify mitigating evidence as something that could rise to the level of a due process violation, but in your case, even though he says I only used it for mitigation because he has no recollection at all of what he received, he could very well have received aggravating material as well as mitigating material or maybe not given as much attention to additional mitigating material. You just don't have any clue what he got. As to the latter portion of your question, yes, Your Honor, in that we don't know what else he could have gotten, how it overall impacted what happened. Where precisely is his testimony? Where precisely, because I recall him saying he doesn't remember what was communicated to him. He doesn't even remember who communicated it to him. However, he remembers it being positive and it was the basis for him deciding to not propose removal, but instead propose only demotion. Where is that testimony in here? Because I remember it, but I don't have it at my fingertips. Yes, Your Honor, in the appendix of pages 869 to 872, we have the cross-examination of Mr. Williams' attorney during which the deciding official is questioned regarding how he received the ex parte communication and what impact that had. And is my recollection of that testimony accurate that he said, I don't remember who told it to me and I don't remember precisely what they told me, but I remember that it caused me to decide to lower the sanction? Yes, Your Honor. At the appendix, page 869, the testimony is that it is correct that this ex parte communication was the basis for altering the penalty here and then proceeding through the bottom of page 869 and then in separate questioning on pages 871 and 872, it's established that he did not recall from whom, from where, or what he ultimately received and relied upon. So what, I guess, what is it you think you would get upon a remand? You've already had the opportunity to cross-examine the deciding official, Mr. Mourning. He says, don't remember what, when, who, where, blah, blah, blah, blah, blah, don't remember anything. Just remember it was helpful to the guy. And that's his testimony. So given that factual record, why, how is there an opening here for the idea that there was anything harmful or aggravating at all, number one, given what he said? I don't see how you could extrapolate to the idea that it was anything harmful. But moreover, I don't see how you think you could get anything more helpful since he's saying, I remember nothing other than it was helpful to the guy. So what would a remand give your client? I appreciate your concern, Your Honor, and I believe it dovetails with the opening portion of Judge O'Malley's question a moment ago. That is, what would happen if this were to go back? Judge Newman, you began the questioning here. And if things were to go back, presumably this would not be decided by the same deciding official, because that deciding official has already taken in ex parte information that is now unknown and unknowable as far as we can determine. That new deciding official, reading the appropriate evidence that pursuant to 5 CFR 752.404 is part of a record here, could come to any of a number of penalties. The U.S. Postal Service does not have a table of penalties. That's also a record. But you do realize that the deciding official in this case, minus the ex parte information, was planning on removing your client. That was what he was planning on doing on the basis of the evidence without the ex parte communication. All the ex parte communication did was help your client. So I just don't understand for the life of me why you're here, because I just really see this ending up worse for your client, not better, if it goes back. So I'm just so perplexed at what you think you're going to get if this goes back. If you extract the ex parte communication, you're back in the world where this guy thought removal was appropriate. Maybe the next guy won't think removal's appropriate, but I don't see how you're going to have any shot, reasonably, of getting anything better than demotion. I understand the due process point is sexy, and that's why you're here arguing it, no doubt. But I don't understand what you're going to get for your client out of it. I think, Your Honor, the critical issue here is that we do not know to what extent this information was, in fact, mitigating, whether it may also have been aggravating, and whether in isolation... No, we do know. He says it caused nothing. One thing we know from Mourning is that he said it only caused him to want to reduce the penalty. There's absolutely no testimony that was elicited that gives anything, even the slightest indication that there could have been any aggravating information conveyed to him. Nowhere, at any point, is there any foundation for that argument that you just made on this record. Your Honor, I believe that argument is inherent in the witness in that case and in the record as a whole, having no information about what was conveyed. It's quite difficult to say that someone did not receive any aggravating information when that same someone says, I do not recall what, from whom, or from where I received any information. Except, what he says is that the information I did get caused me to mitigate his penalty. Again, I appreciate your concern, Your Honor. If we look to the Douglas Factors worksheet, that is the only contemporaneous documentation of the design officers. He does tell us one other thing. He says that what was conveyed to him was what your client presented at the 650 mediation. Correct? Doesn't he say, what was conveyed to him was the information that your client presented at the 650 mediation. Those are the two facts we know. What was conveyed to him supposedly was only the information possessed by your client and presented, and number two was what caused him to mitigate the penalty. Doesn't that really bound the universe of what he was told? That bounds the universe of his testimony. It does not necessarily bound the universe of what he was told, which is why we have due process protections in place. If we believe him, it certainly does. If the lower court found as a matter of fact that he was being truthful. If we believe him, then he understood that what was told to him was what Mr. Williams stated at the mediation. That does not mean that what was told to him was in fact what Mr. Williams stated at the mediation. He cannot know that as he was not personally at the mediation. So here we're really shooting at an unknown and unknowable, and we cannot know what would or would not have happened absent these circumstances. He said he had decided that the offenses required separation. You have a record. You've had a trial. That's behind us. The only question now is what decision flows from it. And I share this view. It's hard to see how it could come out better. You're saying the ex parte communication was improper. So we agree. Yes, it was improper. Don't count that. This decision maker or another has the record, which is undisputed. Whether it's disputed or not, it's there, stating that these infractions occurred. I think most of them were admitted, maybe all of them. Your Honor, if I could make two final points in response before I reserve the remainder of my rebuttal time. First, during this discussion, we have not yet looked back to the Douglas Factors Worksheet, the contemporaneous documentation associated with the deciding officer's penalty decision. In the Douglas Factors Worksheet, the 650 mediation is not referenced under Factors 4 or 11 regarding mitigation. In fact, under Factors 4 and 11, the deciding officer said, no, I see no basis to mitigate the penalty. Under Factor 12, where the deciding officer references the 650 mitigation or the 650 mediation, the deciding officer says, in view of what was said at the 650 mediation, I think another opportunity to be an employee here at the Postal Service is warranted. It is only later in testimony that the question of whether this is purely mitigating or mitigating versus aggravating came up at a subsequent proceeding before the MSPB. On the factual record, that is suggestive that there is at least the possibility that this had an impact on him that could have been aggravating and or mitigating. On the legal end of this, I think we cannot lose sight of the essential fact that the question we are deciding cannot be, with the benefit of hindsight in any given case, whether the particular case would likely have been decided more in favor of or more adversely to any particular party, especially where we do not know for certain how that would come out. Rather, from a constitutional perspective, we need to determine whether the ex parte communication was material. And here, I think there can be no dispute but that it was material. Why? In Ward and in Stone, is it okay if I go a little over? In Ward and in Stone, we both, in both cases, we cite for understanding materiality for due process concerns to be so likely to cause prejudice that no employee can fairly be required to be subjected to deprivation of property under such circumstances. Tell me how the ex parte communication here was so likely to cause prejudice to this particular individual because due process I don't believe extends only to new and material information under our case law. I believe it extends to new and material information that is so likely to cause prejudice that no employee can be fairly required, etc., etc. So if that's my understanding of our case law, which is completely consistent with both Ward and Stone, what about this? And you have the burden of proof. This is your affirmative defense. So how have you established to me that there was an ex parte communication in this case that was so likely to cause prejudice to this employee? In this case, the only evidence we have as to how the ultimate penalty was determined, as to what particular factor impacted the decision maker and ultimately resulted in the setting of the penalty, is the 650 mediation. That was the primary item mentioned in factor 12. He goes through everything in the Douglass factors, right? He discusses the length of employment of this employee and everything else. So the Douglass factors seem to me to be complete and adequate in terms of, I don't see you appealing his failure to walk through the Douglass factors. No, Your Honor. That's not our focus today. But in the Douglass factors worksheet, the only item that was particularly called out as impacting the choice of remedy. To lower remedy. The factor that was called out to lower the choice of remedy. I'm not sure it's wholly fair to say a factor chosen to lower the remedy. It's in view of what you said in your 650 mediation. I'm willing to give you another chance at the agency. That is suggestive that but for this, there might have been a decision to remove. But it does not say, I recommend removal. I have chosen to mitigate down to a different penalty on this basis. That notion does not come out until the subsequent testimony in front of the administrative judge. I don't feel like you answered my question. Which was, tell me how you have proven, since it's your burden of proof, that the new and material evidence was quote, so likely to cause prejudice that no employee can be fairly required to be subject to deprivation of property under such circumstances. How have you established, since it's your burden of proof, that the new and material evidence, i.e. the ex parte communication, prejudiced your client? How have you established that? Your Honor, I don't believe that you're looking to the correct test. I'm quoting out of Ward. We emphasize that the ultimate inquiry is whether the ex parte communication is so substantial and so likely to cause prejudice. Where is your prejudice? Where is your proof of prejudice? You're operating under the idea that new and material is in a vacuum. New and material is not in a vacuum. In both of these cases it was said, we emphasize the ultimate inquiry is whether the ex parte communication is quote, so substantial and so likely to cause prejudice. That is the spin they put on new and material. You may not like it, but both cases say that expressly. That's what they mean by new and material. They don't mean new and material in the abstract as you would like it to be used. They mean new and material that is so likely to cause prejudice to this employee. Where is, have you established that prejudice to this man? Your Honor, if I may, I have two responses. Yes, please answer. Thank you. The first is Stone sets out a standard of new and material and several factors to consider in determining what is new and material. Those factors have been this court's guiding principles since then and in Ward and even subsequently in Young, this court has said where it is determined that the evidence was in fact relied upon to alter a decision then the primary factor we need to focus on is factor one of the Stone factors, whether the information is new. You're running out the prejudice. In both cases, this quote is, I'm reading you a quote. This is the quote from Ward and it's quoted Stone. We emphasize the ultimate inquiry is whether the ex parte communication is so substantial and so likely to cause prejudice. You can't take the words new and material in a vacuum and extract out the language you don't like about these cases. These cases say new material and prejudicial. Both of them say that expressly. I appreciate that, Your Honor. That was getting to the second point of my response. The first being that I believe that's not the correct reading of the line of cases, that it is not new material and a third prong prejudicial. But, directly to where is the prejudice here? The prejudice here is in not knowing even to this date what information was brought in and whether that information could have or whether the proceedings otherwise could have resulted in a lesser penalty. We do not have a table of penalties at the United States Postal Service. We do not have a lengthy recitation in the Douglas Factors worksheet or later as to comparable penalties for comparable offenses. Which means we are looking in a vacuum on the facts of this case as what would the appropriate remedy have been absent an ex parte communication that to this date we still do not know what it was. The best we can do is provide a constitutionally correct proceeding in which the government employee can have the opportunity without procedurally improper ex parte communications to advocate his case and to hope for a constitutionally correct result. Okay. Okay. Mr. Herzfeld. Good morning. May it please the court. The United States Postal Service respectfully requests that the court affirm the decision of the Merit Systems Protection Board which properly concluded that the United States Postal Service acted appropriately in demoting Mr. Williams instead of removing him based on his misconduct. As the court has recognized already the key issue here is penalty as opposed to the misconduct itself. Mr. Williams did not appeal to the board or to this court the fact that he was engaged in misconduct. That is a... Very often these cases do turn on the penalty. I mean when we see these ex parte communications it's usually the penalty that's affected by that. That's correct your honor and certainly that's the case here when it comes to the due process violation. I merely wanted to reiterate the fact that something that each of the judges has already stated that if this does go back down the misconduct is still in place. The finding of misconduct will remain in place. It will be res judicata. It will be the law of the case. The only issue will be the penalty and whether or not he should be removed. Do you agree that as a matter of principle the ex parte communication was improper? Was probably improper communicating what had transpired in the mediation? We concede that your honor. It was in fact improper. Mr. Williams was informed that the mediation proceeding was going to be confidential and that it would not be provided to the decision maker. So how does that concession square with the fact that we set in stone that these due process violations are not subject to a harmless error analysis? That's really what you're arguing, right? It's harmless because it was mitigating. Well, we're not necessarily. In part clearly what we're saying is that it didn't meet the new material standard. That's one of the arguments we make. We also make the argument at the close of part of our brief as it could be implied that the board made that in fact mitigating information can never create a due process violation because it's mitigating as opposed to aggravating. But that sounds like a harmless error analysis which we specifically said was not appropriate in this context. Your honor, that is true and it could come under the standard that Judge Moore mentioned earlier which was that it's so substantial and so likely to cause prejudice that it undermines the due process guarantee. But again, when you say it could come over, as I read these cases that piece so substantial would seem to be in what was supposed to be a confidential mediation. That in other words that's where your substantiality comes from. And then because you can't do harmless error analysis you're not supposed to really look at exactly what was said. I understand that your honor, but I think the concern here was you do have to go through the factors that the court laid out in stone and you have to come to the ultimate conclusion that the board did in fact come to which was that this information was not so as the standard that this court laid out in stone and in ward. And if you go through the factors you find that it does appear to be cumulative information. As the court has already addressed we know that it's mitigating. That was a finding of fact by the Administrative Law Judge and in fact the Administrative Law Judge specifically asked Mr. Mourning did you consider any information outside of the notice of proposed removal and he answered no, I did not. No negative information. Actually this helps you more. What he asked was did you get any negative information that went beyond the notice of proposed removal and he said no. That is absolutely correct your honor. And taken together with the fact that it was presented by Mr. Williams himself and the fact that the burden is on Mr. Williams to prove that this was other than cumulative, based on that alone this court can affirm. I guess my problem is with your bright line that you try to draw with the notion that if you drill down the information was mitigating and because it came from a confidential mediation I have a hard time saying that that isn't essentially just a harmless error analysis. Your cumulative argument seems to be a better one. We concur that the court does not need to go as far as concluding that all mitigating information is always going to be something that doesn't violate due process. I think you could stick to the facts here and that's how we read the board's decisions as essentially sticking to the facts. It laid out the stone factors and then it came to the conclusion based on the so substantial and so likely to cause prejudice standard. That was the ultimate basis of the board's determination. So based on that if the court has no further questions, we respectfully request that the court affirm. Thank you. Mr. Schoenhardt you have a couple of minutes. Mr. Schoenhardt, would you reconcile for me because I have a little trouble with it from Stone. The language I quoted you which is in Stone and Ward, I mean it's here in multiple places, the so substantial and so likely to cause prejudice language. But Judge O'Malley quoted and she's quite correct that in another place in the opinion it says there's no harmless error analysis. So how do you reconcile all of those to make sense out of the due process law here? Your Honor I think this is clarified in Stone that if the ex parte communication is ultimately found to be new and material following the factors provided in Stone, your Honor has identified the ultimate inquiry then that rises to the level of a due process issue and there is no harmless error analysis. If So it's new and material but see you understand that in the context of both Stone and Ward both of those were aggravating communications communications of prior bad acts by the employee right? So both of those went to the heart of the notice and fairness concern. Right? Those are the facts of both Ward and Stone. Correct? Yes. And so in the context of somebody communicating the deciding official bad stuff about an employee that could and possibly did impact the decision, you know that's where the due process concerns would absolutely be at their highest. They'd have to be because fairness and notice demand that you have a right to confront your accuser. You have a right to know all of the bad things about you that could possibly be forging the basis for the decision. And so that's why I'm just having a little trouble reconciling in Stone when they say not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice. I feel like they meant for the new and material problem I understand your definition of everything I know to be the correct definition of material affecting outcome. I get it. But at least in Stone and Ward they seem to work into that idea of materiality likely to cause prejudice. Right? I mean I don't know how else to reconcile this prejudice notion. Your Honor, the second portion of my response as to how to get this out of Ward is that Ward then suggests if the communication does not rise to the level of a due process concern it may still be a procedural defect and we then shift out of the constitutional analysis to in fact a harmless error analysis. But we take these as two different approaches. First we look at the constitutional significance if it does not rise to the level of constitutional significance then we tip back to procedural significance. And there again on a harmless error analysis the definition of harmless error at the agency level is an error that is likely to have caused the agency to reach a conclusion different than it otherwise would have. Isn't the distinction that you need to make, I mean you're still saying you're basically saying the minute it's new in material that's the end of the inquiry. And I understand how they how the cases build in this substantiality analysis into the new in material. But isn't it the distinction that you want to the fact that he wears red tennis shoes to work versus new in material and it's a disclosure of everything that happened at the confidential mediation that's where the due process inquiry would end and you would not go into a harmless error analysis. I think Your Honor that as I understand the hypothetically you're putting out that's generally the case. I think that would largely be built into the materiality analysis as to whether it's red shoes or the totality of what had been presented how that is deemed to be material. I think that is part and parcel of a singular analysis. It's if we do not rise to that level of materiality if it is only whether he wore red shoes then clearly we might say there's no due process violation unless it's a uniform code and then we move on to harmless error analysis. Let me just make sure I understand how your view of new in material would affect cases in general. What if in this case we did know what if the deciding official told us precisely what had been communicated to him what had been communicated from the mediation was that Mr. Williams is a really nice guy who worked for 27 years for the post office and has never been in trouble before. I know those are not precisely the facts of this case. I know nothing about whether he's a nice guy but I know that he did have some prior disciplinary issues in the PTO in the post office but putting those aside suppose what was communicated to him was look he's a really nice guy everybody really likes him and he's worked for the post office for a long time you should give him another chance and suppose that's what the deciding official says this is verbatim what was communicated to me it was communicated to me by a supervisor from the mediation this is what was taken away and suppose that he then says and yes that affected my decision to lower his sanction that is still new and material under your definition because it is information that your client didn't have the opportunity to respond to but it's clear that the only it was only positive and it's clear that the only result was to lower the sanction you still think this procedure would be infirmed and due process would require vacating and remanding under those circumstances if the employee so requested your honor yes I believe that the analysis in stone albeit in the context of an aggravating communication ward albeit in the context of an aggravating communication the analysis in stone is clear that an employee has a right to be aware of the charges and the evidence presented not just the negative evidence but also the positive evidence so the employee has the opportunity to address both the negative and the positive and to provide the opportunity to allow that to impact the case in fact I think this goes back to your questioning a moment ago Judge O'Malley that based on the transcript in front of the administrative judge it would appear that the only evidence the design official got was not aggravating was not negative that is in fact what his testimony was it doesn't quite square with the fact that he has no recollection of what he got it's quite difficult for someone to remember I didn't get anything negative but I also have no recollection of what I got at all from whom or where but you had an opportunity to cross examine to press whether he had no recollection perhaps he was protecting the informant who knows why but that's what he said that and again and he also left absolutely no doubt but that these infractions would otherwise have resulted in dismissal and this is really where we started and in my thinking the concern for the client that this is a risk that the client is willing to take that he's fired completely with a remand and the elimination of that the effect of the communication that this is a nice guy veteran of the post office all the rest of it your honor two brief responses first it is my understanding that Mr. Williams would like the benefit of an entirely new and constitutionally correct proceeding that may result in a lesser penalty that may result in a greater penalty but he would then have the full benefit of the due process afforded to him as to the opportunity to cross examination that was ultimately performed or provided the important thing that we keep in mind is that that was a post decision opportunity to cross examine during proceedings before the merit systems protection board that was not a pre decisional opportunity to take on the evidence that had been presented which is what is required constitutionally in the stone line of cases and by the Supreme Court in Laudermill I know I've exceeded my time any more questions thank you both the case is taken under submission that concludes our argued cases for this morning all rise the honorable court is adjourned until tomorrow morning at 10 o'clock a.m.